UNITED STATES DEPARTMENT OF AGRICULTURE (USDA)
OFFICE OF THE CHIEF FINANCIAL OFFICER
NATIONAL FINANCE CENTER
EQUAL EMPLOYMENT OPPORTUNITY AND WORKFORCE SERVICES STAFF

| | |
|---|---|
| Ronald W. Anderson,<br>Complainant,<br><br>v.<br><br>Mike Johanns,<br>Secretary,<br>Department of Agriculture<br>Agency. | )<br>)<br>)<br>)<br>) USDA Complaint No. 010476<br>)<br>)<br>)<br>)<br>)<br>) |

## Final Agency Decision

### Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the USDA on this complaint.

### Issue Presented

The issue presented herein is whether the Agency subjected the Complainant to discrimination based on race (Black) when management withdrew a job offer on February 22, 2001, for the position of Supervisory Computer Specialist, GS-0334-15, advertised under Vacancy Announcement Number CR-00-25, and the circumstances leading to the withdrawal.

### Procedural Background

| | |
|---|---|
| Dates of Alleged Discrimination: | February 22, 2001 |
| Initial Counselor Contact: | March 13, 2001 |
| Notice of Right to File Received: | April 20, 2001 |
| Amended Notice of Right to File Received: | April 28, 2001 |
| Formal Complaint Filed: | May 4, 2001 |
| Formal Complaint Accepted: | September 6, 2001 |
| Initial Investigation Dates: | October 26, 2001 to January 11, 2002 |
| Supplemental Investigation Dates: | May 4, 2005 to June 21, 2005 |
| Initial ROI Sent to Complainant: | May 10, 2002 |
| Supplemental ROI Sent to Complainant: | July 6, 2005 |
| Complainant's Election for a Final Agency Decision: | June 28, 2005 (prior to receipt of ROI) |
| Authority for Decision: | 29 C.F.R. 1614.110 |

05 2198

FILED
NOV - 9 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## Factual Background

The record reveals that, at the time of the complaint, the Complainant (Black) was employed as a Supervisory Computer Specialist, GS-0334-14, Office of the Chief Information Officer, National Information Technology Center, USDA, Washington, D.C. The Complainant has worked for USDA since 1981 and held this position for more than ten years. (Report of Investigation, Exhibit F2.)

The underlying facts relating to the complaint are not disputed. On September 20, 2000, the Office of Civil Rights, USDA, issued Vacancy Announcement No. CR-00-25, advertising the position of Supervisory Computer Specialist, GS-334-15. The announcement had a closing date of October 19, 2000. The Complainant applied for the position and was included on the Roster of Best-Qualified Candidates referred to the Selecting Official (Black) on January 18, 2001. The selecting official conducted interviews with the Complainant and other candidates and selected the Complainant for the position on February 5, 2001. The Complainant accepted the position, and his selection was publicized throughout the Agency. The scheduled effective date for the selection action was February 25, 2001. (Exhibits F2, F4, and F6.)

By letter to the Complainant, dated February 22, 2001, the Director (White) of USDA's Office of Human Resources Management (OHRM) withdrew the offer of the position. In her letter, the Director informed the Complainant that the position was very sensitive (High Risk/Public Trust) and required a full-field background investigation. She further informed him that when the Agency had begun the process to initiate such an investigation, it learned that a previous background investigation of the Complainant had not been satisfactorily adjudicated. (Exhibit F14.)

After the offer made to the Complainant was withdrawn, the Roster of Best Qualified Candidates initially referred to the selecting official was reissued by OHRM to the selecting official. The selecting official selected another candidate (White) for the position. (Exhibits F2, F4, F6, and F37) On March 6, 2001, after being notified of the subsequent selection, OHRM submitted Form SF-75, Request for Preliminary Employment Data, to the selectee's current employer, the Department of Labor. The documentary evidence indicates that the selectee was granted secret clearance by the Department of the Army on November 7, 1986, and again by the Department of Transportation on August 28, 1992. The SF-75 revealed that a BI (Background Investigation) on the selectee had also been completed by the Department of Labor on January 8, 1997. According to OHRM, the selectee already possessed a Top Secret security clearance. (Exhibits F37 and F38) The effective date of the selectee's promotion to the position advertised was March 25, 2001.

The Complainant contends that he was held to a different standard because of his race. He states that the USDA initiated a full-field background investigation on him in 1998, and that this investigation had not yet been completed. He states that the investigation was placed "on hold" in September 2000, and that he does not know the reasons for this "hold." According to the Complainant, he answered all of the questions and provided all requested materials in 2001. The Complainant further contends that the announcement for the position at issue did not state that a favorable adjudication of a full-field background investigation was needed to apply or be selected for the position. The Complainant believes that the impetus to change the position to a sensitive/high risk position requiring a security clearance came about only after he was selected

and was based on his race. He states that he has worked closely with staff on several sensitive issues, and that other people without security clearances work with highly sensitive data and projects throughout USDA.

The Agency denied that it discriminated against the Complainant based upon any protected basis. Rather, it asserted that after the offer of employment had been extended to the Complainant but prior to the date on which he was to occupy the position, OHRM was verbally informed by the Office of Crisis Planning and Management that the Complainant's suitability for a high risk/public trust position was pending adjudication. Agency officials then learned that a background investigation had previously been initiated in connection with the Complainant's current position, and certain negative findings had not been satisfactorily resolved. By letter dated September 19, 2000, the Director of the Executive Resources and Services Division, through the Deputy Chief Information Officer, Office of the Chief Information Officer, informed the Complainant that a preliminary decision had been made to deny his eligibility for employment in sensitive duties due to adverse information obtained during the investigation conducted by the Office of Personnel Management. The Complainant was informed of specific security concerns[1] that raised questions about his trustworthiness, reliability and judgment and provided a right to challenge the preliminary decision. The Complainant was informed that if he did not exercise the right to challenge the preliminary decision, he would forfeit an opportunity to contest the unfavorable personnel security determination. The Complainant's response was due within 30 days of his receipt of the September letter. (Exhibits F8- F10) The Complainant provided a response dated January 5, 2001. (Exhibit F19.) The OHRM Director was told that the Complainant's response was inadequate and that the Complainant had been detailed to other duties pending the resolution of his suitability clearance. (Exhibit F3.)

Because the Complainant had not achieved the required level of suitability and had not resolved the negative findings arising from the completed investigation and because there were no other positions in the Office of Civil Rights for which the Complainant qualified, the Director made the decision to withdraw the offer to the Complainant. The Director states that she did not know the Complainant's race at the time of the withdrawal (Exhibits F3 and F6.) The Acting Deputy Assistant Secretary for Administration responded to the Complainant's e-mail message to him dated March 2, 2001, advising him that until his personal finances were in order and his security clearance was adjudicated, he could not be placed in the types of positions [High Risk/Public Trust] requiring a satisfactory security clearance. He further stated that this decision could not be overridden by anyone within the Office of Human Resources Management. (Exhibit F16.)

The Agency's witnesses stated that the position for which the Complainant applied had been classified as sensitive/high risk in 1996 but that it wasn't until October or November of 2000 that USDA initiated the process to require clearances for such positions or included language in the vacancy announcements stating that a specific type of security clearance was required for the position. (Exhibits F5, F6, and F28.) The OHRM Director stated that there is a government-wide requirement that all supervisory GS-15 positions in the information technology field be designated high risk/public trust positions. Upon learning that the Complainant's background

---

[1] The statement of reasons identified information that tended to show financial irresponsibility on the Complainant's part when he 1) failed to pay a credit account; 2) failed to pay a tax lien; 3) admitted to a discharged bankruptcy in October 1993; and 4) admitted to filing Chapter 13 bankruptcy in May 1999. The statement of reasons also identified information that tended to show that the Complainant failed to truthfully answer his SF-86 in September 1998 when he answered "no" when asked if, within the past seven years, he had a lien placed against his property for failing to pay taxes or other debts.

investigation had not been satisfactorily adjudicated, members of OHRM's staff discussed several options for resolving the matter. One recommended option was to cancel the announcement entirely and issue another announcement that contained the security clearance requirements. Another option was to make a new selection from the initial Roster of Best Qualified Candidates. The Director stated it was not an option to place the Complainant in the position and await adjudication of the security clearance problems because the Complainant had not resolved the negative findings arising from the already completed suitability investigation, despite knowing of the issues for many months. Ultimately, the offer to the Complainant was withdrawn; another selection was made from the initial list of best-qualified applicants. (Exhibits F3 – F7.)

Documents in the investigative file reflect that the vacancy announcement for the position in issue did not reflect that the position was sensitive nor did it state a requirement that the selectee would be required to demonstrate suitability for the position based on a background investigation. (Exhibits F13 and F31.) Such a requirement was stated in an announcement for the position of Computer Specialist, GS-334-14, issued by the Office of the Chief Information Officer on February 5, 2001. (Exhibit F15.) The position description for the position sought by the Complainant indicates that the position was initially described as "noncritical sensitive"; however, the sensitivity aspects of the position were subsequently modified to indicate that the position is "high risk/public trust." (Exhibits F25 and F33.) The OHRM Director acknowledged that the requirement for a security clearance was not included in the vacancy announcement, but stated that it was not a "fatal flaw." (Exhibit F3.) An OHRM staff member further stated that very few announcements listed this requirement. (Exhibit F6)

In rebuttal, the Complainant argued generally that the testimony of the OHRM Director was vague, evasive, and not forthcoming. The Complainant acknowledged that he had been given alternative work because of questions regarding his suitability. He stated that, nevertheless, he continued to perform duties involving high risk and public trust. The Complainant also stated that the OHRM Director knew his race because he had worked closely with the office and staff on several program issues and had spoken personally with the OHRM Director. The Complainant asserted that the OHRM Director seized upon the suitability issue in order to circumvent the truth about reclassifying the position after she learned that he had been selected for the position. (Exhibit F2.)

### Analysis and Findings

In order for a claim to succeed in a charge of employment discrimination, the evidence first must establish a *prima facie* case of discrimination. That is, the record must show that the action taken by the agency, if otherwise unexplained, could have been caused by a discriminatory motive or intent. The facts or circumstances of the case, as well as the basis of discrimination alleged, will determine the proof required to establish a *prima facie* case.

A *prima facie* case of discrimination may be shown by the following elements.

- For charges of discrimination based on race, color, sex, national origin, religion, age, marital status, or sexual orientation, the Complainant must be a member of a protected class.

- The agency's decisions, actions, or its failure to act resulted in harm to terms and conditions of the Complainant's employment.

- Evidence exists that will permit an inference of discrimination to be drawn. This evidence may include, as appropriate, comparison with similarly situated employees or applicants, statistical disparities between different protected groups, remarks or comments indicative of stereotypes, unusually harsh treatment, change in treatment after engaging in protected EEO activity, temporal proximity with such activity, or other relevant factors.

In the absence of direct evidence of discrimination, the method of establishing racial discrimination is the three step process set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also, Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979) (applying *McDonnell Douglas* to claims brought under the ADEA). The Complainant has the initial burden of establishing a *prima facie* case. If the Complainant meets this burden, then the burden shifts to the agency to articulate a legitimate, nondiscriminatory reason for its challenged action. The Complainant must then prove, by the preponderance of the evidence, that the legitimate reason articulated by the agency was not its true reason, but was a pretext for discrimination.

The Complainant is a member of a protected class by virtue of his race (Black). The Complainant asserts White employees were allowed to hold sensitive positions without being required to hold security clearances. Although the Complainant asserted that similarly situated employees not in his protected group were accorded more favorable treatment than he, the evidence reveals that this was not the case. There is no evidence that employees who have failed to obtain required security clearances were promoted to high risk/public trust positions.

Although the initial inquiry of discrimination usually focuses on whether the Complainant has established a *prima facie* case, following this order of analysis is unnecessary when the agency has articulated a legitimate, nondiscriminatory reason for its actions. *See, e.g., Washington v. Department of the Navy*, EEOC Petition No. 03900056 (May 31, 1990). Here, the Agency has explained that, although the Complainant was initially selected for the position, the offer was withdrawn because a preliminary decision had been made to deny him eligibility for employment in sensitive duties, and the Complainant had not resolved the issues underlying this decision. This constitutes a legitimate, nondiscriminatory reason for the disputed action.

The record clearly establishes that a background investigation was initiated for the Complainant as early as 1998. This investigation was required because of the sensitive nature of the duties of the position he then held. It is noted that the investigation was conducted by the investigative arm of the Office of Personnel Management, not by any Agency of USDA. OPM's investigation disclosed some adverse information that led to the preliminary decision to deny the Complainant eligibility for employment in sensitive positions. This information was conveyed to the Complainant before the Agency announced the vacancy in dispute. A prudent person would have acted immediately to dispel any notion that there were questions about his suitability to serve in sensitive positions. The Complainant did not act for several months, however, and his clearance had not been adjudicated when he was selected for the position.

There is no question about the Complainant's qualifications for the position. The selecting official chose the Complainant from among the candidates on the best-qualified list. Neither the

selecting official nor the Human Resources personnel, who were processing this personnel action, had any questions about the Complainant's ability. The problems arose when, after the selection was announced, OHRM took the routine administrative actions necessary to complete the process. One such action was to request the background investigation required for the incumbent of this position. It was at this point, that the Agency learned that the Complainant's background investigation initiated by his current employer had not been satisfactorily adjudicated. Responsibility for such adjudication lies within USDA's Executive Resources and Services Division and the Complainant.

The position for which the Complainant applied is a high-level managerial position in the Tracking, Applications, and Analysis Division, Office of Civil Rights. The incumbent has overall responsibility for information management and technology systems within an extremely critical division of the Agency. In these circumstances, it cannot be said that it is unreasonable for the Agency to identify the position as "High Risk/Public Trust," requiring the incumbent to successfully obtain a clearance based on a favorably adjudicated background investigation. As established by the record, the Complainant was not able to meet this requirement at the time of his selection.

The Complainant was undoubtedly placed in an embarrassing position by the announcement of his selection to the position and subsequent withdrawal of the offer, upset, and clearly believes that the decision was unfair. However, Title VII does not protect against unfair business decisions, but only against decisions motivated by an unlawful animus. *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 15 FEP Cases 746, 750 (5th Cir. 1977). To paraphrase the *Burdine* court, 25 FEP Cases at 118, the fact that one may think that management made its decisions arbitrarily (which we do not here), does not, in and of itself, create EEO liability. *See also, St. Peter v. Secretary of the Army*, 659 F.2d 1133, 1138 n.5, 26 FEP Cases 194, 197 n.5 (D.C. Cir. 1981). It is not the place of a trier of fact to second-guess management's personnel decisions absent a demonstrably discriminatory motive. Loeb v. Textron, Inc., 20 FEP Cases 29 (1st Cir. 1979). We decline to do so here.

The ultimate burden of proving discrimination rests with the Complainant. The standard of proof in any employment discrimination action is high. In order to prevail, the Complainant must prove the challenged action occurred, not for the reasons stated by the Agency, but for unlawful reasons. It is not enough for the fact finder to disbelieve the Agency's rationale for its actions; instead, the fact finder must believe the Complainant's explanation of intentional discrimination. In other words, the fact finder's task is to make an independent determination of the Agency's intent, not to adjudicate the merits of the facts or suspicions upon which it is predicated. *Williams v. Southwestern Bell Telephone Co.*, 718 F.2d 715 (5th Cir. 1983). Whether the Complainant's response to the decision to deny him employment in sensitive positions was sufficient to warrant favorable adjudication of the background investigation is not an issue that may be decided here.[2] Although the inclusion of a statement identifying the position being filled as a High Risk/Public Trust position requiring favorable adjudication of a background security investigation in the vacancy announcement may have spared the Complainant the embarrassment of the announcement of his selection and subsequent

---

[2] The EEOC has held that it is precluded from reviewing the validity of the requirement of a security clearance and the substance of a security clearance determination. *Thierjung v. Department of Defense (Defense Mapping Agency)*, EEOC Request No. 05880664 (November 2, 1989); *see also* "Policy Guidance on the Use of National Security Exception contained in § 703(g) of Title VII of the Civil Rights Act of 1964, as amended," EEOC Notice No. N-915-041 (May 1, 1989).

withdrawal of the offer, it would not have altered the fact that a favorable adjudication was required. Considering the record in its entirety, and noting especially the Complainant's acknowledgement that he has been reassigned to other duties pending adjudication of his background investigation, it must be found that the Agency's requirement that the Complainant successfully pass a background investigation was based on its demonstrated need that managers in such positions demonstrate suitability for employment. Because the Complainant was not able to meet that requirement, the Agency could not be obligated to promote him to the position. Furthermore, the candidate ultimately selected for the position did meet the security requirement.

### Conclusion

The weight of the evidence indicates that discrimination did not occur with respect to the issues in the above complaint. Accordingly, no relief or corrective action is warranted or ordered in this matter.

### Appeal Rights

This is the final decision of the Department of Agriculture on the cited complaint or complaints. The following are the only rights available to challenge this decision:

### APPEAL TO THE EEOC

A Notice of Appeal may be filed with the EEOC within thirty (30) calendar days after receipt of this final decision. EEOC Form 573, Notice of Appeal/Petition, should be used in filing the appeal, as well as what is being appealed should be indicated in the form. A copy of EEOC Form 573 is provided with this decision. Such notice should be addressed to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 19848
> Washington, DC 20036

As an alternative to mailing, your appeal may be hand-delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> 1801 L Street, N.W.
> Washington, DC 20507

As an alternative, you may also send your appeal by fax to the Office of Federal Operations at (202) 663-7022.

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

At the same time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there must be a service certification that a copy of the submission has been submitted to the USDA/Employment Adjudication Division and the date and method of service. A copy of the appeal and any submissions in support thereof shall be forwarded to the agency at the following address:

> U.S. Department of Agriculture
> Office of the Chief Financial Officer
> National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> P.O. Box 29729
> New Orleans, LA 70189-0729

Please note that, if your appeal is not filed within the thirty (30) calendar day time limit, the appeal may be dismissed by the EEOC. However, the EEOC may, at its discretion, extend the time limits and accept the appeal based upon a written statement that there was no actual notification of the time limit, or that a timely Notice of Appeal could not be filed, due to extenuating circumstances.

Any statement or brief in support of your appeal must be submitted to the EEOC within thirty (30) calendar days of filing the Notice of Appeal. The EEOC, Office of Federal Operations accepts statements or briefs in support of appeals by facsimile transmittal, provided that they are no more than ten (10) pages long.

Any statement or brief in opposition to your appeal must be submitted to the EEOC and served on you (or your attorney of record, if represented by an attorney) within thirty (30) calendar days of receipt of the statement or brief supporting the appeal, or if no statement or brief supporting the appeal has been filed, within sixty (60) calendar days of receipt of the appeal. It is the responsibility of USDA to submit the entire complaint file to the EEOC, Office of Federal Operations, within thirty (30) calendar days of initial notification that an appeal has been filed.

## CIVIL ACTION IN FEDERAL DISTRICT COURT

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

(1) within ninety (90) days of receipt of this final decision if no appeal has been filed; or,

(2) within ninety (90) days after receipt of the EEOC's final decision on appeal; or,

(3) after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you must name **Mike Johanns, Secretary of Agriculture**, as the defendant. You must also state

the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action, under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to 'rile the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date you receive the final decision by USDA or an EEOC's decision on appeal.

Unless an appeal is filed with the EEOC, failure to file a civil action within ninety (90) calendar days may result in the dismissal of your civil action. Filing a civil action under 29 C.F.R. §1614.407 or §1614.408 shall terminate processing an appeal before the EEOC. If a civil action is filed subsequent to filing an appeal with the EEOC, the parties are requested to notify the EEOC in writing.

*[signature]*
Donald R. Lewis
Civil Rights Director

*August 1, 2005*
Date

Enclosure